THE C. II. SEUFF.[1]

NEW YORK, L. E. & W. R. Co. *v.* THE C. II. SEUFF.

(*District Court, S. D. New York.* June 21, 1887.)

1. COLLISION—TOW AND FERRY BOAT—RULE OF THE STARBOARD HAND—SPECIAL RULE—DUTY TO STOP AND BACK—RULE 21.

As the tug S. was coming down the North river, she saw, according to her witnesses, the green light of the ferry-boat P., some two points on her starboard bow. She whistled twice, and the P. once, whereupon the S. stopped and backed. The witnesses for the ferry-boat testified that they saw ahead the green light of the S., a little off the port bow; that one whistle was given her, and then a second single blast, to which the S. replied with two; that at the last signal the P. had commenced to round into her slip, and she continued on at full speed, until struck by a railroad float which the S. was towing. The rounding course of the ferry-boat was known to the pilot of the S. *Held* that, as the ferry-boat and her course were recognized by the S., the latter was bound to have avoided her, not only under the general rule of the starboard hand, but also under the special rule relating to ferry-boats approaching their slips; and, for attempting to cross ahead of the P., the S. was in fault. *Held, also*, that the continued view of the green light of the S. on about the same bearing should have indicated to the P. that the S. was swinging across her course, and was such evidence of "risk of collision" as made it obligatory upon the P. to stop and back, under rules 21 and 24; that for failure to do so she was also in fault.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

2. SAME—RIGHT OF WAY.
    Though a boat having the right of way may keep her course, she is not ab-
solved from stopping and backing, when there is risk of collision.

*Wilcox, Adams & Macklin,* for libelant.
*Hill, Wing & Shoudy,* for claimant.

BROWN, J. At a few minutes past 7 P. M., in the evening of October 12, 1885, as the large steam ferry-boat Pavonia, bound from Pavonia ferry, Jersey City to New York, was rounding to make her slip at Twenty-Third street, North river, she was struck near her wheel-house by the starboard bow of a large railroad float, coming down river in tow and alongside of the steam-tug Charles H. Seuff. Both boats sustained some damage. The testimony is quite irreconcilable as to the general bearing of the boats from each other, and the lights that were visible by each. The conflict, however, can be partly explained by the different positions of the boats at different times, and the probably imperfect statement in regard to the lights that were visible during the entire time they ought to have been seen. There is considerable difference in the estimate of the distance of the place of collision from the New York shore. It was probably from 600 to 800 feet, and abreast of Twentieth or Twenty-First street. The witnesses all agree that the current was ebb, except near the New York shore.

Numerous witnesses for the Pavonia testify that after leaving Pavonia ferry, which is one and three-quarters miles further down the river than Twenty-Third street ferry, the ferry-boat worked gradually up and across the river, until, when abreast of Thirteenth street, she was within about 400 or 500 feet of the New York shore; that there her wheel was starboarded somewhat, so as to haul off a little further from the shore, preparatory to rounding into the slip at Twenty-Third street; that, when opposite about Sixteenth street, the green and white lights of the Seuff were seen about two points off the port bow, to the westward of the middle of the river, and from a quarter to half a mile distant; that a signal of one whistle was given her, but, not receiving any answer, a second similar whistle was given soon afterwards, to which a reply of two blasts from the Seuff was received; that no other signals were given or heard; that the Pavonia, at the last signal, had commenced to round to make her slip, and continued on at full speed, or about 10 or 11 knots, until the collision, all the time seeing the green-colored light only of the Seuff, which seemed to be following them up to the eastward.

The witnesses on the part of the Seuff state that, coming out from Thirty-Third street pier, after passing to the westward of a man of war anchored nearly in mid-river off Twenty-Sixth street, she headed nearly down river, and only a little to the eastward, and, when off Twenty-Third street, saw the green light of the Pavonia a couple of points on her starboard bow; that she gave the Pavonia a signal of two whistles, and got an answer of one blast, whereupon she slowed and stopped, and backed until the collision, when as she claimed her headway was stopped.

The pilot of the Seuff was familiar with the route of the Pavonia ferryboats; he recognized the Pavonia, and knew her destination, and the general ordinary course of such boats in rounding into the slip.

It is probable that the green light only of the Pavonia may have been visible to the Seuff for a few minutes, while she was under a starboard helm in going above Thirteenth street; but before that her red light only, or possibly both colored lights, must have been visible to the Seuff as she came from Twenty-Sixth street downward. But whatever may have been the light seen at that moment, as the Pavonia and her destination were recognized, her *course* was the turn necessary for her to take in entering her slip as usually practiced. The Seuff, according to her own testimony, had her on the starboard hand, and was bound to avoid her under the general rule, as well also as under the special rule applicable to ferry-boats approaching their slips. *The John S. Darcy*, 29 Fed. Rep. 644, 647, and cases there cited.

The Seuff, being at a safe distance, near the middle of the river, in starboarding her wheel, as she manifestly did in order to come nearer to the New York shore, voluntarily, and without justifiable cause, undertook to cross the known and necessary path of the Pavonia in making her slip. The pilot probably thought the Pavonia was sufficiently distant to enable him to do this safely. He was mistaken, though he starboarded so much as to bring the tug and tow considerably out of her course to the eastward at the time of the collision. There was plenty of room to the westward unobstructed, and he had no reason to suppose that the Pavonia would continue so far out in the stream as to make any difficulty in his passing her port to port. If she was at any time two or three points on the Seuff's starboard bow, I am satisfied it was only because the Seuff was headed considerably more than her witnesses admit towards the New York shore. I must hold the Seuff, therefore, to blame for undertaking to cross the known course of the ferry-boat, instead of keeping out of her way, as she should have done. *The John S. Darcy*, *supra*.

While the principal fault is, doubtless, chargeable upon the Seuff, for the reason above stated, I find it impossible to hold the Pavonia free from blame, keeping in view the stringent obligations to avoid collisions and other perils to life and property which this court can never relax. For a considerable time before the collision the green light of the Seuff was seen from the ferry-boat to continue upon about the same bearing. This was evidence to the Pavonia for a considerable time that the Seuff was swinging to the eastward, since otherwise the Seuff must have broadened off the Pavonia's bow. The courses of the two boats were therefore clearly crossing, and the continued absence of the Seuff's red light from sight, when the boats had approached within a quarter of a mile of each other, it seems to me, was such clear evidence of a "risk of collision" as made it obligatory upon the ferry-boat to stop and back, under the twenty-first rule of navigation. Though the Pavonia might "keep her course," she was not absolved from backing, as required by that rule and by rule 24, when that became necessary in order to avoid collision.

*The Galileo,* 28 Fed. Rep. 469, 473; *The J. S. Darcy, supra; The Aurania,* 29 Fed. Rep. 98, 124.

A vessel cannot be held blameless in disregarding a statutory rule, except where it is entirely clear that a timely-obedience of the rule would not have avoided the collision; and that the only chance of escaping collision, or of lessening the damage, was a departure from the statutory requirement. This is by no means clear in this case. It must, moreover, be inferred from the testimony that the inspector's rule requiring an exchange of whistles when vessels come within half a mile of each other was not promptly observed; nor could there have been a seasonable repetition of signals by the Pavonia, as was required, on the Seuff's failure to reply, before the two blasts from the Seuff, when the collision was so near. The damages and costs must therefore be divided.